## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>        **Plaintiff,**<br><br><br>        **v.**<br><br><br>**U.S. PAROLE COMMISSION and**<br>**COURT SERVICES AND OFFENDER**<br>**SUPERVISION AGENCY FOR THE**<br>**DISTRICT OF COLUMBIA,**<br><br><br>        **Defendants.** | **Civil Action No. 12-1807 (JDB)** |

## <u>MEMORANDUM OPINION</u>

Plaintiff John Doe brings this action against the U.S. Parole Commission and the Court

Services and Offender Supervision Agency for the District of Columbia ("CSOSA").  He

challenges the imposition of a "Sex Offender Aftercare [Assessment]" condition on his

supervised release, and seeks declaratory and injunctive relief.  Now before the Court are Doe's

motion for a preliminary injunction barring enforcement of the assessment condition and

defendants' motion to dismiss in part and for summary judgment.  For the reasons set forth

below, defendants' motion for summary judgment will be granted and Doe's motion will be

denied.

## BACKGROUND

In April 2010, Doe was convicted in D.C. Superior Court of assault with a deadly weapon

and carrying a pistol without a license.  <u>See</u> Defs.' Mot. to Dismiss in Part & for Summ. J. &

Opp'n to Pl.'s PI Mot. [ECF 18] ("Defs.' MSJ"), Ex. 1 [ECF 22] 1-2.  He was sentenced to 28

months' incarceration and a three-year term of supervised release, which he is currently serving. See id., Ex. 2 [ECF 22-1]; Compl. [ECF 2] ¶ 32. Doe's conditions of supervised release are set by the Parole Commission. See D.C. Code § 24-403.01(b)(6). CSOSA is responsible for Doe's supervision during his supervised release term. See id. § 24-133(c)(2).

In November 2011, Doe was released from prison to a halfway house. See Compl., Ex. 6 [ECF 2-4]. He was told that he would not be required to register as a sex offender or undergo sex offender treatment. Id. Doe returned to prison in February 2012 due to halfway house program failure and was released again later that month. See Compl. ¶ 38. No sex offender conditions were imposed. See id. ¶ 39.

In August 2012, Doe went to his regularly scheduled meeting with his Community Supervision Officer ("CSO") and learned that he had been reassigned to CSOSA's Sex Offender Unit. Id. ¶ 40. On August 20, Doe's CSO and Paul Brennan, a Supervisor CSO in the Sex Offender Unit, submitted a request for modification of Doe's supervised release conditions to the Parole Commission. See Compl., Ex. 5 [ECF 5-1]. CSOSA asked that Doe's conditions be modified to include a "Special Sex Offender Aftercare Condition," which would have required Doe to acknowledge his need for treatment and participate in a mental health program "with special emphasis on long-term sex offender testing and treatment." Id. Doe learned of the request to modify his conditions several weeks later. See Compl. ¶ 43. In response, on September 19, 2012, his counsel sent the Parole Commission a written objection to the proposed modification. See id. ¶ 44. Doe's CSO and Brennan then submitted a second request for modification to the Parole Commission, asking that Doe be subject only to a "Special Sex Offender Assessment." See Compl., Ex. 11 [ECF 5-2]. The Parole Commission granted this request, and on October 17, 2012, issued a Notice of Action informing Doe that the following

had been ordered: "Sex Offender Aftercare [Assessment] – You shall undergo an evaluation to determine the need for sex-offense treatment therapy." Compl., Ex. 1 [ECF 2-1]. The Notice said that the decision was not appealable. Id.[1] It did not give reasons for the decision.

The primary basis for imposing the special condition was a juvenile adjudication that took place in 2003, when Doe was eleven years old. See Compl., Exs. 5 and 11 (CSOSA requests); id., Ex. 13 [ECF 5-3] (memorandum of Parole Commission case analyst). Doe had pled "involved" to second degree sexual abuse of his five-year-old god-sister. See Compl. ¶ 33; id., Ex. 13.[2] Also noted, by both CSOSA and the Parole Commission case analyst who recommended imposition of the special condition, were two other incidents that allegedly occurred around the time of Doe's juvenile adjudication. One involved Doe's presence among a group of boys at school that surrounded a girl being raped; the other involved Doe's two-year-old female cousin. See, e.g., Compl., Ex. 11, at 2-3. Neither incident resulted in an arrest or a conviction. See id. Based on "the serious nature of [Doe's] past sexual behavior," it was recommended that the Parole Commission impose the sex offender assessment condition "in the interest of public safety." See Compl., Ex. 13.

After his juvenile adjudication, Doe was placed on probation for nine months and underwent a court-ordered psychological evaluation. See Compl., Ex. 11, at 2. The examiner, a

---

[1] Several months after Doe filed this lawsuit, the Parole Commission notified him that the decision in the October 17, 2012 Notice of Action was in fact appealable. See Pl.'s Opp'n to Defs.' MSJ & Reply in Supp. of PI Mot. [ECF 26] ("Pl.'s Opp'n & Reply"), Ex. 8 [ECF 28] (Jan. 25, 2013). Because Doe had filed suit before receiving this "correction," however, the Parole Commission said that he was "not required" to pursue an administrative appeal. Id. Doe signed his name on an appeal form on February 6, 2013, but did not provide any materials in support of his administrative appeal. Id.

[2] The Court interprets a plea of "involved" in a juvenile proceeding as the equivalent of a guilty plea in an adult proceeding.

psychology intern, reported that Doe "[did] not seem to fit the typical definition of a 'sex offender,'" that his acts did not appear to have been done in a predatory manner, and that he did not seem "sexually deviant." Compl., Ex. 4 [ECF 5] 7. Rather, the examiner noted, Doe would be classified as a "Naive Experimenter" in literature on juvenile sex offenders. Id. Since Doe's 2003 juvenile adjudication, there have been no reported instances of any sexual misconduct or sexually deviant behavior on his part. Doe is not required to register as a sex offender, and would not be required to do so under the special condition.

In November 2012, Doe brought this action challenging the imposition of the sex offender assessment condition and sought a preliminary injunction. At that time, funding had been authorized for sixteen fifty-minute individual assessment sessions, one ninety-minute group assessment session, two polygraphs (an "Offense Specific Polygraph" and a "Sexual History Polygraph"), and an assessment report. See Compl., Ex. 2 [ECF 2-2]. Defendants agreed to postpone Doe's initial assessment session pending the resolution of Doe's motion for a preliminary injunction and any dispositive motion filed by defendants. In January 2013, defendants filed a motion to dismiss in part and for summary judgment. The Court held a motions hearing on June 21, 2013. The parties' motions are now ripe for resolution.

## LEGAL STANDARDS

Defendants move to dismiss Doe's due process claims under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "If, on a [Rule 12(b)(6) motion], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

56." Fed. R. Civ. P. 12(d).  In resolving defendants' motion as it relates to all of Doe's claims,

including his due process claims, the Court will rely on matters outside the pleadings.  Hence,

defendants' motion will be treated as one for summary judgment.

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by identifying those portions of "the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other materials," which it

believes demonstrate the absence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1);

see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to

preclude summary judgment, the Court must regard the non-movant's statements as true and

accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than

the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  Moreover,

"[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may

be granted." Id. at 249-50 (citations omitted).  Summary judgment, then, is appropriate if the

non-movant fails to offer "evidence on which the jury could reasonably find for the

[non-movant]." Id. at 252.

**DISCUSSION**

5

In this action, Doe asserts three claims for relief: a statutory claim, a procedural due process claim, and a substantive due process claim. Before turning to each of these claims, the Court will address a matter of vigorous dispute between the parties: how to properly characterize the "assessment" ordered by the Parole Commission.

Defendants have submitted three declarations from Paul Brennan, on which they rely in offering their characterization of the assessment. Defendants stress that the assessment is "only an evaluation as a preliminary step" and that the Parole Commission has neither "classified" Doe as a sex offender nor required him to undergo sex offender "treatment." See Defs.' MSJ 20, 23. According to Brennan: "A sex offender assessment is distinctly different from sex offender treatment." Defs.' Reply [ECF 32], Attach. 1, Supp'l Decl. of Paul Brennan [ECF 32-1] ("Supp'l Brennan Decl.") ¶ 6. He explains that an assessment involves up to sixteen individual sessions with a therapist at the Center for Clinical and Forensic Services ("CCFS"), whose purpose it is to identify risk factors and determine if there is a need for sex offender treatment. Id. ¶¶ 7, 13-14, 28.[3] He further explains that the group assessment session listed on the funding authorization form is actually "an orientation given to newly assigned offenders"; a therapist gives the attendees an overview of the assessment process and "[n]o intimate information is discussed." See Defs.' MSJ, Attach. 1, Decl. of Paul Brennan [ECF 19-1] ("Brennan Decl.") ¶ 11. Brennan states that polygraphs are used in the assessment phase but that no incident- or offense-specific polygraph will be administered if the person being assessed does not deny the occurrence of his or her past offense. Supp'l Brennan Decl. ¶ 15. Regarding disclosure, Brennan states that Doe's

---

[3] Brennan states that sixteen sessions are not always required to complete the assessment. Supp'l Brennan Decl. ¶ 13. The number of sessions needed depends on the individual and is to be determined after the assessment begins. See id.

juvenile adjudication is confidential and will not be disclosed to his "collateral contacts," such as family, friends, and significant others.  See id. ¶¶ 27, 37; see also Brennan Decl. ¶ 18 (stating that CSOSA is "bound by confidentiality requirements regarding juvenile information and would not be permitted to disclose protected information without consent").  He also notes that CSOSA does not require its staff to tell a supervisee's collateral contacts that he or she is assigned to the Sex Offender Unit, and that the door to the Sex Offender Unit is innocuously labeled "Special Supervision Office."  Supp'l Brennan Decl. ¶¶ 29, 32.

Doe argues that the term "assessment" is misleading.  See Pl.'s Mot. for Prelim. Inj. [ECF 3] ("Pl.'s PI Mot.") 4.  He contends that if the sex offender assessment condition is enforced he will be subjected to mental health "treatment" of "the most intrusive sort."  Id.  Doe stresses that the central component of CSOSA's evaluation process is a "psychosexual assessment" – a series of detailed questions about a person's sexual history, thoughts, and practices.[4]  See id.; see also

---

[4] Citing Wills v. U.S. Parole Commission, 882 F. Supp. 2d 60, 66 n.3 (D.D.C. 2012), in which the plaintiff had already undergone such a psychosexual assessment, Doe asserts that he will be asked, among other things:

- whether he describes himself as homosexual, heterosexual, or bisexual;
- what sexual experiences he had prior to the age of 10;
- at what age he first masturbated, and the number of times per day and per week he masturbated at the height of his masturbation;
- at what age he first had sexual intercourse, and how many partners he has had;
- the level of sexual confidence he felt as an adolescent;
- the varieties of sex in which he has engaged, including vaginal, anal, oral and sadomasochistic;
- numerous aspects of his sexual interactions with consenting adult partners, done in private;
- at what age he first viewed pornography, and how frequently he looks at pornography;
- whether he has ever suffered from impotence, or from a sexually transmitted disease;
- how stimulated he would be by, among other things, seeing an attractive boy under the age of 12; engaging in anal sex; having sex with a prostitute; looking through a window at a woman masturbating; and watching two men having sex;
- the number of times that he has stolen underwear;
- the number of times that he has cross-dressed; and

Compl. ¶¶ 25-26; Compl., Ex. 3, Excerpt of CSOSA Policy Manual [ECF 2-3] ("CSOSA

Manual") 10-11.  A sexual history polygraph covering Doe's answers to these questions would

follow the psychosexual assessment, and, should it be determined that Doe was "deceptive"

during the polygraph, he could be found in violation of his supervised release conditions.  See

CSOSA Manual 33-35.  Defendants do not deny that, if Doe is evaluated, the psychosexual

assessment and sexual history polygraph described by Doe will be administered.  They respond,

however, that an in-depth assessment of a person's sexual history and thoughts is the only way to

determine that person's risk of committing a sex offense, and that the psychosexual assessment,

polygraph included, is still just an assessment and does not rise to the level of treatment.  See

6/21/13 Tr. of Mots. Hr'g [ECF 37] 40-42, 54.

Doe additionally asserts that despite defendants' assertions to the contrary, his "status" as

a sex offender will be publicized pursuant to CSOSA policy, even though his juvenile records are

confidential by law.  See Pl.'s Opp'n & Reply 8; see also D.C. Code § 16-2331(b).  Doe relies in

large part on the chapter of CSOSA's Policy Manual on supervision in the Sex Offender Unit,

which contains some policies that apply only to registered sex offenders but others that appear to

apply to anyone being supervised in the Sex Offender Unit.  The manual requires, for example,

that CSOs "notify all persons with whom the offender resides about the offender's supervision

status and conviction for any sexual offenses/for all registered sex offenders"; "establish contact

with other members of the offender's residence"; "have communication with all identified

collateral contacts"; and "regularly communicate with all valid collateral contacts to assess the

offender's compliance with the conditions of release, verify pertinent information, gather

---

•   the number of times that he has had sexual contact with a dead animal or person.
See Pl.'s PI Mot. 4-5; see also Compl. ¶ 26.

intelligence and assess risk to community safety in accordance with the assigned supervision level (i.e., family, therapists, employers, etc.)."  See Compl. ¶ 31 (citing CSOSA Manual 4, 7). Pointing to an incident that occurred last Halloween, Doe asserts that his supervision in the Sex Offender Unit has already resulted in the disclosure of his status as a sex offender.  On October 31, 2012, a police officer and two CSOSA officers came to Doe's grandmother's house and told Doe, in front of his grandmother, that he could not go outside that night because he was a registered sex offender (which he is not).  Id. ¶ 54.  Apparently, this incident happened as part of a CSOSA "initiative" applicable to all supervisees in the Sex Offender Unit.  See id.

With the parties' competing characterizations of the sex offender assessment condition in mind, the Court now turns to Doe's claims in this case.

## I.    Statutory Requirements for Conditions of Supervised Release

District of Columbia offenders on supervised release, like Doe here, are subject to the authority of the Parole Commission until completion of their term of supervised release.  D.C. Code § 24-403.01(b)(6).  The Parole Commission has "the same authority" as is vested in federal district courts by 18 U.S.C. § 3583(d)-(i).  Id.  Under § 3583(d)(1), any condition of supervised release must be "reasonably related" to "the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs."  See 18 U.S.C. § 3583(d)(1) (referencing factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)); United States v. Accardi, 669 F.3d 340, 346 (D.C. Cir. 2012).  Any condition must also "involve[] no greater deprivation of liberty than is reasonably necessary" for purposes of deterrence, public protection, and effective treatment, and must be consistent with any pertinent policy statements issued by the U.S. Sentencing Commission under 28 U.S.C. § 994(a).  18 U.S.C. § 3583(d)(2)-(3).  The Court

reviews the Parole Commission's imposition of a special condition of supervised release for abuse of discretion.  See United States v. Legg, 713 F.3d 1129, 1131 (D.C. Cir. 2013) (appellate review of district court's imposition of supervised release conditions for abuse of discretion).[5]

Doe contends that the sex offender assessment condition (1) is not reasonably related to the offenses of conviction, his history and characteristics, or the goals of deterrence, public protection, and treatment, and (2) involves a greater deprivation of liberty than is reasonably necessary.  See Compl. ¶¶ 61-65.

Doe is currently on supervised release for assault with a deadly weapon and carrying a pistol without a license.  Although, as defendants point out, a victim of Doe's assault offense was a woman, his current offenses were not of a sexual nature and bear no relation to the sex offender assessment condition at issue.  The question, then, is whether the condition is reasonably related to Doe's history and characteristics and/or to deterrence, protection of the public, and treatment of Doe's correctional needs.  See 18 U.S.C. § 3583(d)(1); see also United States v. Barajas, 331 F.3d 1141, 1146 (10th Cir. 2003) ("[E]very circuit to have decided the issue has held that a condition of supervised release may be imposed despite not being related to every enumerated factor, so long as it is reasonably related to one or more of the factors.").

Defendants maintain that the assessment condition is reasonably related to Doe's history and characteristics because his juvenile adjudication (and, to a lesser extent, the two other alleged incidents in his juvenile history) provides cause to seek to determine whether any additional conditions are needed to prevent future sex offenses.  In this way, defendants argue, the condition is also reasonably related to their efforts to protect the public and provide correctional treatment.

---

[5] The parties agree that an abuse-of-discretion standard of review applies to Doe's statutory claim.  See Defs.' MSJ 10-11; 6/21/13 Tr. 5, 7.

Doe responds that his juvenile adjudication is too remote in time to justify imposition of the sex offender assessment condition. At the time the condition was imposed, more than nine years had passed since Doe's juvenile adjudication, and there is nothing in the record to suggest that Doe committed any sort of sexual misconduct during that time. And because Doe was just eleven years old at the time of his prior offense, the passage of nearly a decade with no indication that Doe is likely to commit future sex offenses is perhaps even more significant than it would be for an individual with a history of sex offenses as an adult. See Compl., Ex. 4, at 7 (psychological evaluator's observation that Doe did not appear to fit typical definition of "sex offender" but rather appeared to be "Naive Experimenter"). Thus, the evidence of Doe's propensity to commit future sex offenses is not strong.

Nonetheless, Doe has a sex offense in his past. Although a considerable amount of time has passed since that 2003 offense, nine to ten years is not so great a time gap as to render any condition imposed today not "reasonably related." Doe cites several cases where courts have found that old convictions, without more, did not justify the imposition of sex offender conditions. See United States v. Dougan, 684 F.3d 1030, 1037 (10th Cir. 2012) (seventeen-year-old conviction); United States v. Sharp, 469 F. App'x 523, 525 (9th Cir. 2012) (sex offense "more than a decade old" at time of sentencing); United States v. Thomas, 212 F. App'x 483, 487 (6th Cir. 2007) (twenty-year-old conviction); United States v. Carter, 463 F.3d 526, 531-32 (6th Cir. 2006) (seventeen-year-old convictions); United States v. T.M., 330 F.3d 1235, 1240-41 (9th Cir. 2003) (twenty-year-old conviction and forty-year-old charge); United States v. Scott, 270 F.3d 632, 636 (8th Cir. 2001) (fifteen-year-old conviction); see also United States v. Worley, 685 F.3d 404, 409 (4th Cir. 2012) (vacating sex offender conditions based solely on twelve-year-old convictions but recognizing that record on remand might nevertheless

11

support imposition of conditions to advance goals of public protection and rehabilitation); United States v. Kent, 209 F.3d 1073, 1077 (8th Cir. 2000) (condition requiring psychological counseling not reasonably related to physical abuse or threats made by defendant more than thirteen years prior). Yet in each of these cases, more time had passed between the prior sex offense and the imposition of the challenged condition than passed in this case. The Court will not strike the assessment condition solely because of the age of Doe's juvenile adjudication.

Moreover, in most of the cases relied on by Doe, the challenged conditions involved more than just an assessment. See, e.g., Dougan, 684 F.3d at 1032 (sex offender assessment and treatment, "potentially including a polygraph and a penile plethysmograph"); Sharp, 469 F. App'x at 525 (conditions requiring sex offender evaluation and, if directed by probation officer, treatment for sexual deviancy);[6] Carter, 463 F.3d at 528 (sex offender treatment); T.M., 330 F.3d at 1239 (conditions included sex offender treatment); Scott, 270 F.3d at 634 ("sex offender and/or mental health treatment"). In the Court's view, the nature of any special condition imposed is certainly relevant to whether that condition is reasonably related to a defendant's history and characteristics. Where, as here, there is a past sex offense but no recent evidence of a propensity to commit future sex offenses, it would be unreasonable to mandate treatment without any determination that there is a current need for it. To require that such a determination be made, on the other hand, is not inherently unreasonable. Doe contends that it is unreasonable to require an assessment because he was "already evaluated" when he was eleven. See Pl.'s Opp'n & Reply 2. But just as a 2003 adjudication does not definitively establish that Doe is likely to commit a sex offense today, neither does a 2003 evaluation definitively establish that he is not.

---

[6] Here, in contrast to Sharp, the assessment condition does not authorize treatment if CSOSA determines that treatment is necessary.

The Parole Commission has a legitimate interest in not releasing untreated sex offenders into the community and may take steps, within reason, to avoid doing so.  Accordingly, the Court concludes that an assessment condition is reasonably related to Doe's history and characteristics and defendants' obligations to protect the public.

That does not end the inquiry, however.  The particular condition imposed must "involve[] no greater deprivation of liberty than is reasonably necessary."  18 U.S.C. § 3583(d)(2).  As depicted by defendants, the condition is a reasonable means of determining Doe's current risk to the public and need for treatment, if any.  It requires only an assessment and not treatment – a distinction that, if real, is significant.  As the Ninth Circuit observed in United States v. Johnson: "Sexual offender treatment programs can be very significant restraints on liberty.  Johnson must undergo only an assessment, which is a much less significant restraint." 697 F.3d 1249, 1251 (9th Cir. 2012) (citation omitted) (upholding assessment condition).  Doe argues, however, that a condition may cause a greater deprivation of liberty than is reasonably necessary even if it nominally requires only an "assessment."  See 18 U.S.C. § 3583(d)(2).  He points to United States v. Thomas, an unpublished Sixth Circuit case in which the court found a greater deprivation of liberty than was reasonably necessary, even though the district court had not imposed the special condition requested – which would have required participation in a sex offender treatment program – and instead required only participation in an assessment program. See 212 F. App'x at 487-88.  That court reasoned: "As recognized by both the probation officer and district court, the assessment program is an intensive program.  It will require Thomas to attend weekly group and individual counseling sessions over a period of approximately three months, and require him to submit to a polygraph.  The imposition of the assessment is in many ways no less stringent than requiring sex-offender treatment."  Id.

13

Here, too, the assessment would be "intensive": Doe would be required to complete a questionnaire probing every aspect of his sexual history, submit to a polygraph, attend a group orientation session, and attend as many as sixteen individual sessions with a therapist.  If deciding what kind of assessment condition to impose in the first instance, the Court might have chosen one less intensive than that imposed by the Parole Commission.  But the Court is not now faced with that task, and instead must only determine whether the Parole Commission abused its discretion by imposing a condition of supervised release that involved a greater deprivation of liberty than was reasonably necessary.

The Court has already concluded that some assessment is warranted.  At the motions hearing, defendants' counsel said that a searching probe into Doe's sexual history and thoughts is the only way to determine whether he poses any risk or needs treatment.  6/21/13 Tr. 40-42, 54.  Although defendants have not made clear why the particular sexual history questionnaire used by CCFS is necessary to make an informed determination in this case, or why a polygraph is necessary to test Doe's responses to the questionnaire, or why as many as sixteen sessions may be necessary to complete the assessment process, allowing discovery on these matters would, at best, bring forward differing opinions about, say, the need to ask a particular question or the added value of a polygraph.  But that would not put the Court in a better position to draw a principled line between aspects of the assessment that are reasonably necessary and those that are not.  And, moreover, the Court finds no genuine dispute that the sexual history questionnaire, the polygraph, and the assessment sessions are all aimed at assessing Doe's need for treatment.  Doe has not questioned the usefulness or reliability of these tools in determining sex offender risk, nor has he suggested that an equally effective assessment could be done through alternative means.

Instead, Doe focuses on the "deprivation of liberty" that purportedly will result if the

assessment goes forward.  See 18 U.S.C. § 3583(d)(2); Pl.'s PI Mot. 20-21; Pl.'s Reply 18-19.

Doe does not contend that any one aspect of the assessment, standing alone, deprives him of a

liberty interest.  In the Court's view as well, no single aspect impermissibly intrudes on Doe's

liberty.  A psychosexual assessment and polygraph, for example, are intrusive into the mind, but

they are "different in kind" from the kind of intrusions that have been found to implicate

"significant liberty interest[s]."  See United States v. Stoterau, 524 F.3d 988, 1006 (9th Cir. 2008)

(comparing Abel testing to polygraph testing and concluding that Abel testing "does not

implicate a particularly significant liberty interest"); see also, e.g., United States v. Mike, 632

F.3d 686, 695-96 (10th Cir. 2011) (recognizing that conditions requiring residential treatment or

penile plethysmograph testing implicate significant liberty interests); United States v. Weber, 451

F.3d 552, 567-68 (9th Cir. 2006) (listing self-reporting interviews and polygraph testing among

"alternatives available in the treatment of sexual offenders that are considerably less intrusive

than plethysmograph testing").  Doe contends that the assessment as a whole, if not any particular

part, does implicate "significant liberty interests."  See Pl.'s PI Mot. 21.  As explained below,

however, the Court disagrees: the challenged condition does not cross the line between

assessment and treatment, nor does it implicate a particularly significant liberty interest.

Accordingly, and because a thorough assessment is justified in this case, the Court concludes that

the assessment condition "involves no greater deprivation of liberty than is reasonably

necessary."  See 18 U.S.C. § 3583(d)(2).

## II.   Due Process

The Fifth Amendment to the U.S. Constitution protects against deprivations of "life,

liberty, or property, without due process of law."  U.S. Const. amend. V.  A procedural due

process violation occurs when government action deprives a person of a liberty or property

interest without affording appropriate procedural protections.  See Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 689 (D.C. Cir. 2009).  A substantive due process violation occurs only when government action interferes with a fundamental right or liberty interest.  See Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc).  Doe raises both procedural and substantive due process claims in this case.[7]

A.     Procedural Due Process

In addressing a procedural due process challenge, the Court must first determine whether the plaintiff has been deprived of a protected liberty or property interest.  See Gen. Elec. Co. v. Jackson, 610 F.3d 110, 117 (D.C. Cir. 2010).  Only after finding the deprivation of a protected interest does the Court determine whether the government's procedures satisfied due process. See id.  At this second step, the Court applies "the now-familiar Mathews v. Eldridge balancing test, considering (1) the significance of the private party's protected interest, (2) the government's interest, and (3) the risk of erroneous deprivation and 'the probable value, if any, of additional or substitute procedural safeguards.'"  Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

1.     Doe's claimed liberty interests

Although individuals on probation or supervised release "'do not enjoy the absolute liberty to which every citizen is entitled,'" they nevertheless may have liberty interests protected by the Due Process Clause.  See Wills, 882 F. Supp. 2d at 75 (quoting Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)); accord Morrissey v. Brewer, 408 U.S. 471, 480-82 (1972).  Doe asserts that the challenged condition implicates three significant liberty interests: his right to refuse

---

[7] Doe asserts a procedural due process claim against the Parole Commission and a substantive due process claim against both the Parole Commission and CSOSA.  Compl. 15-16.

mental health treatment, his right to avoid the stigma of being classified as a sex offender, and his right to privacy in sexual matters.

First, Doe tries to invoke his interest in refusing unwanted mental health treatment – "in the form of an onerous 'assessment' that is indistinguishable from treatment." See Pl.'s PI Mot. 22. The Supreme Court has recognized a protected liberty interest in refusing medical treatment. See Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990). Doe's problem, however, is that he cannot identify any "treatment" to be refused. Attempting to equate assessment with treatment, Doe again cites Thomas, in which the Sixth Circuit found the assessment at issue to be "intensive" and "in many ways no less stringent than" treatment. See Pl.'s PI Mot. 27 (citing 212 F. App'x at 487-88). As Doe rightly points out, he would be subjected to a psychosexual assessment, a polygraph, a group orientation session, and up to sixteen individual sessions. See id. From Doe's perspective, all of that may be quite intensive and nearly as unwelcome as treatment. But "treatment" connotes an active step – doing something to "treat" or remedy an identified problem – that is missing here. The assessment will only seek to identify the problem, if any, and will stop short of doing anything about it: the psychosexual assessment and questionnaire are designed to gather information (albeit very private information); the orientation serves merely to give an overview of the assessment process and forms to be signed and address any general questions or concerns, see Brennan Decl. ¶ 11; and the individual sessions, no matter how many are needed to complete the assessment, are simply not for purposes of changing Doe's behavior, see Brennan Supp'l Decl. ¶¶ 7, 9, 11 (in individual assessment sessions, therapist "seeks to identify known risk factors related to sex offending behavior and determine if there is a need for sex offender treatment"). There is, then, no genuine dispute that the assessment process lacks any sort of behavior-modifying component. Hence, the Court concludes that Doe's liberty

interest in refusing unwanted medical treatment is not implicated here.

Doe next argues that the sex offender assessment condition implicates his liberty interest in avoiding the stigma of sex offender classification and treatment.  In Vitek v. Jones, a case involving a prisoner's due process challenge to his transfer to a mental hospital, the Supreme Court held that the "stigmatizing consequences" of the transfer, along with the prisoner's subjection to "mandatory behavior modification as a treatment for mental illness," were "the kind of deprivations of liberty that requires procedural protections."  445 U.S. 480, 494 (1980).  In evaluating due process challenges to sex offender conditions by prisoners and parolees, several courts of appeals, and one judge in this district, have applied Vitek to find a protected liberty interest in avoiding the stigma associated with sex offender classification and treatment.  See Wills, 882 F. Supp. 2d at 75-76 (discussing Vitek and cases from Third, Fifth, Ninth, Tenth, and Eleventh Circuits).

In these cases, that combination – of classification and treatment – was critical.  In Wills, the plaintiff, who was serving a term of supervised release for drug offenses and had never been convicted of a sex offense,[8] was transferred to CSOSA's Sex Offender Unit and subjected to the same "Special Sex Offender Aftercare Condition" that CSOSA initially requested for Doe.  See 882 F. Supp. 2d at 64-65 & n.1; Compl., Ex. 5.  By the time the plaintiff filed suit, he had already undergone a psychosexual assessment, polygraph, and several sex offender treatment sessions.  Wills, 882 F. Supp. 2d at 66.  He had also been forced to disclose the nature of his sexual offense to his then-girlfriend and acknowledge his need for sex offender treatment.  Id. at 65-66.  The

---

[8] In 1984, twenty-five years before the imposition of a sex offender condition on his supervised release, the plaintiff had been charged with assault with intent to rape; the charge had been dismissed in 1986.  See Wills, 882 F. Supp. 2d at 64, 67.

court found that the Parole Commission's imposition of the sex offender condition "implicated the plaintiff's liberty interest by (1) classifying the plaintiff as a sex offender, (2) publicizing his sex offender status, and (3) mandating sex offender therapy." Id. at 76. These three factors "jointly" resulted in "stigmatizing consequences," the court said, as first articulated by the Supreme Court in Vitek and then applied to sex offender classification and conditions by five courts of appeals. Id. (internal quotation marks omitted).

  In the circuit decisions referenced in Wills, the courts similarly found a liberty interest implicated by the combination of being labeled or classified as a sex offender and having to undergo treatment, therapy, or behavior modification of some sort. See Renchenski v. Williams, 622 F.3d 315, 328 (3d Cir. 2010) (stating that "the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest"); Coleman v. Dretke ("Coleman I"), 395 F.3d 216, 223 (5th Cir. 2004) (finding "a liberty interest in freedom from the stigma and compelled treatment on which [prisoner's] parole was conditioned"), reh'g en banc denied, 409 F.3d 665 (5th Cir. 2005); Chambers v. Colo. Dep't of Corr., 205 F.3d 1237, 1238, 1242-43 (10th Cir. 2000) (finding liberty interest in avoiding sex offender label and treatment conditioned on prisoner's admission that he committed a sex offense); Kirby v. Siegelman, 195 F.3d 1285, 1288, 1291-92 (11th Cir. 1999) (per curiam) (finding liberty interest in not being classified as sex offender, where classification meant mandatory participation in group therapy sessions to be eligible for parole); Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.").

As already discussed, however, the assessment condition here does not require Doe to admit his need for treatment, undergo any treatment or therapy, or otherwise change his behavior in any way.  Hence, the authority he relies on – Wills and the circuit decisions cited therein – does not compel the conclusion that Doe has a protected liberty interest here.  Compare Wills, 882 F. Supp. 2d at 77 ("[N]either party disputes that the [sex offender condition] 'required' that the plaintiff, who was not a sex offender, 'undergo sex offender treatment.'").

Even assuming that classification plus something less than treatment can implicate a liberty interest, the degree to which Doe has been "classified" as a sex offender is not clear. Defendants insist that Doe "has not been classified as a sex offender," and Brennan has declared as much.  See Defs.' Reply 4-5 (citing Supp'l Brennan Decl. ¶ 19).  But in Wills, the defendants had similarly argued that the plaintiff was not "formally classified as a sex offender," and the court disagreed, explaining: "The defendants assigned the plaintiff to CSOSA's Sex Offender Unit; repeatedly coerced him to admit his 'need' for the mandated sex offender treatment; routinely generated 'Adult Sex Offender Treatment Services Progress Reports' for the plaintiff; and compelled the plaintiff to disclose the nature of his 'sex offense' to his then-girlfriend."  882 F. Supp. 2d at 76.  Here, not all of these factors are present, but like the plaintiff in Wills, Doe has been assigned to CSOSA's Sex Offender Unit.  Even if that fact is not made public – defendants emphasize, for example, that the door of the Sex Offender Unit is labeled "Special Supervision Office" – Doe himself is fully aware of it and may well feel a stigma because of it. See Supp'l Brennan Decl. ¶ 32; see also Renchenski, 622 F.3d at 327 (concluding that classification of plaintiff "even as a possible sex offender" was stigmatizing).

Defendants assert, however, that neither Doe's supervision in the Sex Offender Unit nor his juvenile adjudication will be disclosed.  They say the following about CSOSA's disclosure

20

policy: a person undergoing a sex offender assessment is asked to sign a waiver of "Limited Confidentiality," which allows information about the person's assessment or treatment to be shared with only his or her therapist and supervision team; collateral contacts may not obtain such assessment or treatment information without the person's written consent, which is not required to be given; and, though CSOSA's manual does not specifically address juvenile adjudications, CSOSA is bound by confidentiality requirements as to any such adjudications and hence does not disclose information about a person's confidential juvenile adjudications without his or her written consent.  See Brennan Decl. ¶ 18; Supp'l Brennan Decl. ¶¶ 26-27, 37; see also 6/21/13 Tr. 76 (Doe's supervision in Sex Offender Unit disclosed "only [to] individuals in CSOSA with a need to know").

Doe counters that CSOSA's manual indicates that disclosure of a supervisee's history is "a fundamental aspect" of supervision in the Sex Offender Unit and that the manual makes no exception for juvenile adjudications.  In addition, Doe points to Wills, in which the plaintiff, who had not been convicted of a sex offense and was not required to register as a sex offender, was required to disclose the nature of his prior sex offense to his then-girlfriend months before his assessment even began.  See Pl.'s Surreply [ECF 34] 9 (citing Wills, 882 F. Supp. 2d at 65).  This anecdotal evidence is somewhat troubling and arguably "in tension" with defendants' assertion that a supervisee's prior sex offense will be disclosed only if he or she is a registered sex offender.  See id.; Brennan Decl. ¶ 15; see also Supp'l Brennan Decl. ¶ 34.  But significantly, the prior offense at issue in Wills was an adult one, in contrast to the juvenile adjudication at issue here, and according to defendants, CSOSA's disclosure policy distinguishes between adult and juvenile criminal history.  See Supp'l Brennan Decl. ¶¶ 35, 37.  The Court reads the Brennan declarations to say that the confidentiality of juvenile adjudications trumps any otherwise-

applicable CSOSA policies, and there is no hint that CSOSA has ever disclosed (or even come close to disclosing) information about Doe's juvenile offense to anyone outside of CSOSA or CCFS.  Hence, the Court finds no genuine dispute that the sex offender assessment condition will not result in "the revelation of the details of [Doe's] juvenile offense," which is of "primary concern" to Doe.  See Pl.'s Surreply 7.

Of secondary concern to Doe is the revelation of assessment or treatment information. See id.  On this score, Doe's concern is likely warranted.  First, as part of the assessment, Doe will have to attend a group orientation session.  Although no personal information will be shared at the orientation, the fact that Doe is undergoing a sex offender assessment will be disclosed to the other attendees.  In addition, the incident that occurred last Halloween at Doe's grandmother's house constitutes a disclosure of sorts.  Officers told Doe, in front of his grandmother, that he could not go outside on Halloween because he was a registered sex offender.  Compl. ¶ 54. Presumably, that happened because Doe was being supervised in the Sex Offender Unit. Defendants say the incident was an "anomaly" and that "[i]t is not what is going to happen going forward in terms of disclosure," but such statements do not give the Court complete confidence. 6/21/13 Tr. 43.  The chapter of CSOSA's manual on supervision in the Sex Offender Unit does not generally distinguish between individuals undergoing an assessment and those undergoing treatment, between individuals who are required to register as sex offenders and those who are not, or between individuals who committed a sex offense as an adult and those who committed a sex offense as a child.  Although the Halloween incident perhaps should not have happened under CSOSA's stated policy, see Supp'l Brennan Decl. ¶¶ 35, 37, it did in fact happen, and the manual does not make clear what protocols should apply in supervising a person like Doe.  Thus, some other "anomaly" could easily occur, and the disclosure could be to a larger or different

22

audience (such as an employer) and could have significant stigmatizing effects.

The sex offender assessment condition, then, may result in a limited disclosure – of the fact that Doe is being supervised as a sex offender or potential sex offender or the fact that he has some sort of sexual misconduct in his past, or both.  But any disclosure is likely to be limited, and will not be accompanied by treatment.  To the extent that a liberty interest in avoiding the stigma of sex offender classification is implicated, then the process due will not be as great as in Vitek and the other cases relied on by Doe.

The final liberty interest claimed by Doe is based on his right to sexual privacy.  Relying on Whalen v. Roe, 429 U.S. 589 (1977), Doe first argues that the sex offender assessment condition implicates his interest in "'avoiding disclosure of personal matters'" because the psychosexual assessment would delve deeply into Doe's sexual history, thoughts, and practices. See Pl.'s PI Mot. 28-29 (quoting Whalen, 429 U.S. at 599).

Although the Supreme Court has on several occasions referred to the kind of privacy interest asserted by Doe, it has declined to decide whether there is a constitutional privacy interest in avoiding disclosure of personal matters.  See NASA v. Nelson, 131 S. Ct. 746, 751, 756 (2011) (discussing Whalen, 429 U.S. at 599-600, 605, and Nixon v. Administrator of General Services, 433 U.S. 425, 457 (1977)).  The D.C. Circuit, moreover, has expressed "grave doubts" about the existence of "a constitutional right of privacy in the nondisclosure of personal information." Am. Fed'n of Gov't Emps. v. HUD, 118 F.3d 786, 791 (1997).  And it has stated that, assuming such a right exists, "the individual interest in protecting the privacy of the information sought by the government is significantly less important where the information is collected by the government but not disseminated publicly." Id. at 793; see also Nelson, 131 S. Ct. at 751, 761 (assuming without deciding that informational privacy right existed but

Case 1:12-cv-01807-JDB   Document 39   Filed 08/05/13   Page 24 of 34

concluding that right was not violated by challenged background check inquiries, in light of government interests at stake and "substantial protections against disclosure to the public").

Here, even assuming that a constitutionally protected interest in nondisclosure of personal information exists, Doe does not have an interest of this sort that can support a due process claim.  The interest he asserts is based on the intrusive questions that will be asked of him as part of the assessment.  See Pl.'s PI Mot. 29.  But his answers to these questions will be used solely for the purpose of determining whether and to what degree he needs treatment; they will not be publicly disclosed in any way.  In Goings v. Court Services & Offender Supervision Agency, the court rejected the plaintiff's argument that a special condition requiring sex offender evaluation and treatment implicated his privacy interest in avoiding disclosure of personal matters, stating: "Although [the special condition] requires the plaintiff to undergo sex offender treatment, which may involve demands for him to divulge deeply private information, this information is to be used for the purpose of the plaintiff's treatment and not for public dissemination."  786 F. Supp. 2d 48, 75 (D.D.C. 2011).  Doe tries to distinguish Goings by arguing that there will be "public dissemination" in this case – pursuant to CSOSA's policy of disclosing supervisees' sex offenses to their collateral contacts and through a "group therapy session."  See Pl.'s PI Mot. at 30 & n.24.  But, as discussed above, Doe's juvenile adjudication will remain confidential by law, and no personal information will be disclosed at the group orientation.  See D.C. Code § 16-2331(b); Brennan Decl. ¶¶ 11, 18 (stating that information about Doe's juvenile adjudication is protected from disclosure "even if such protections are not spelled out in the manual").  And, perhaps more importantly, the information that Doe claims will be made public (the details of his juvenile offense) is not the same information he seeks to keep private (details about his personal sexual experiences and innermost thoughts).  Accordingly, because defendants' reason for conducting a

detailed probe into Doe's sexual history is a legitimate one, and because Doe's answers to the sexual history questionnaire will be protected from disclosure, he does not have a liberty interest in informational privacy that would be violated by the challenged condition.  See Nelson, 131 S. Ct. at 761-64.

Doe also argues that the condition would interfere with his right to independently make "certain kinds of important decisions."  See Whalen, 429 U.S. at 599-600.  He says that CSOSA's assessment is structured such that his "perfectly legal sexual decisions" may cause him to suffer adverse consequences, in the form of further assessment or treatment.  Pl.'s PI Mot. 31.  But this statement is little more than speculation, and if in fact CSOSA determines that Doe's past sexual decisions make further assessment or treatment necessary, it will be because something about them indicates a possible risk of future sexual misconduct.  Taking these and other steps to prevent Doe from committing unlawful sexual acts will not deprive him of his right to make lawful sexual decisions.

2.    What process is due

Because Doe may have a liberty interest in avoiding the stigma of sex offender classification, the Court will turn to the question of what process is due.  Defendants argue as an initial matter that, because Doe was adjudicated of a sex offense, "'no further process [was] due before imposing sex offender conditions.'" See Def.'s MSJ 24 (quoting Meza v. Livingston, 607 F.3d 392, 401 (5th Cir. 2010)); see also Neal, 131 F.3d at 831.  Although Doe's juvenile adjudication may bear on the strength of his liberty interest, if any, in avoiding stigma, the Court is unwilling to conclude that it means that Doe was due no process at all.  See Goings, 786 F. Supp. 2d at 74 n.15 (finding no support in this circuit for proposition that "those convicted of sex offenses have no liberty interest in being free from sex offender conditions").

25

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (internal quotation marks omitted). Due process, however, is not "a technical conception with a fixed content unrelated to time, place and circumstances," but rather is "flexible" and will call for different procedural protections depending on the particular situation at hand. Id. at 334 (internal quotation marks omitted). To determine the kind of notice and hearing required in this case, the Court must balance (1) the significance of Doe's liberty interest, (2) the government's interest, and (3) the risk of erroneous deprivation and the value of additional safeguards. See id. at 334-35.

Doe asserts that, in imposing the sex offender assessment condition, defendants gave him "no process at all." See Pl.'s PI Mot. 33. That is not entirely accurate, however. He was notified of CSOSA's initial request to modify the conditions of his supervised release. Compl. ¶ 43. His counsel submitted a written objection to such modification, which apparently had some effect, as CSOSA changed its request – instead of asking for sex offender "testing and treatment," as it had in its initial request, CSOSA asked only for an assessment. Id. ¶¶ 42, 44-46; see also Pl.'s Opp'n & Reply 29-30 (surmising that, but for Doe's counsel's intervention, initially requested condition would have been imposed). The form notifying Doe of the second request for modification also notified him that he had ten days to object or comment to the Parole Commission, and Doe initialed next to an option stating, "I object to the proposed modifications of conditions and my reasons are stated on the reverse side of this form." See Defs.' MSJ, Ex. 11 [ECF 22-10] (initialed by Doe September 26, 2012). But neither he nor his counsel provided reasons or evidentiary support for this objection. His counsel's objection letter, sent one week prior, challenged the imposition of the initially proposed condition requiring assessment and treatment,

and raised objections to treatment specifically.  See Compl. ¶ 44; id., Ex. 10 [ECF 2-8] 8-11.[9]

Doe was thereafter notified that the later-requested sex offender assessment condition was being

imposed and was told that he could not appeal.  He filed this lawsuit in November 2012.  In

January 2013, Doe was told that he could appeal but did not have to for administrative

exhaustion purposes.  See Pl.'s Opp'n & Reply, Ex. 8.  Doe signed his name on the appeal form,

but again did not provide any supporting materials.  See id.

To assess the sufficiency of this process, the Court looks to the Mathews factors.  As

noted, any liberty interest Doe has is limited to avoiding the stigma that results from being

classified as a sex offender.  However, the Court concludes that this interest is not particularly

significant for several reasons.  First, treatment is not a "corresponding condition[]" of Doe's

supervision in the Sex Offender Unit or the sex offender assessment condition.  See Wills, 882 F.

Supp. 2d at 75-77; see also Johnson, 697 F.3d at 1251 (stating that an assessment is "a much less

significant restraint" on liberty than treatment); Renchenski, 622 F.3d at 329-30 (noting with

approval other courts' focus on "highly stigmatizing" and "intrusive nature" of sex offender

---

[9] Doe complains that his counsel's September 19, 2012 objection letter was "apparently
never considered" by the Parole Commission, as it did not appear in the Parole Commission case
analyst's memorandum and was improperly rejected as an "appeal."  See Pl.'s PI Mot. 32-33; see
also Compl. 13 n.6; id., Ex. 12 [ECF 2-9].  But the letter pre-dated CSOSA's request for the
condition actually imposed, and following that request, Doe did not attach or reference his
counsel's letter in objecting to that condition, nor did his counsel re-submit an objection to the
later-requested assessment condition.  See Compl., Ex. 13 (case analyst's memorandum noting
that Doe objected to modification but "did not support his objection with any statements or
documentation within the required time frame").  Although it could perhaps be inferred that Doe
objected to the second proposed condition for some of the same reasons set forth in his counsel's
letter objecting to the first proposed condition, he did not make this clear to the Parole
Commission.  And despite mischaracterizing the objection letter as an "appeal," the Parole
Commission apparently considered it anyway (though belatedly, after the decision to order the
assessment condition had been made).  See Compl., Ex. 12 ("Your appeal has been referred to
the Commission's Case Operations section for review and a recommendation on whether your
case should be reopened for new information of substantial significance.").

treatment).  Because there is no treatment here, only an assessment, there is less potential harm

from classification as a sex offender; hence, the liberty interest in avoiding stigma, if any, is less

significant.[10]

It also bears noting, moreover, that, unlike the plaintiffs in Wills and the appellate cases

finding a liberty interest implicated by sex offender classification, Doe effectively pled guilty to a

sex offense.  See e.g., Renchenski, 622 F.3d at 320; Coleman I, 395 F.3d at 225; Kirby, 195 F.3d

at 1287; Wills, 882 F. Supp. 2d at 62; see also Jennings v. Owens, 602 F.3d 652, 658-59 (5th Cir.

2010) ("The conclusion that the sex offender therapy condition stigmatized Coleman rested

heavily upon the fact that he had never been convicted of a sex offense – therefore, the label 'sex

offender' was false as applied to him." (discussing Coleman v. Dretke ("Coleman II"), 409 F.3d

665, 668 (5th Cir. 2005) (per curiam))).  Although a juvenile adjudication is "not a conviction"

under District of Columbia law, see D.C. Code § 16-2318, any stigma resulting solely from the

imposition of the assessment condition is lessened by the fact that Doe admitted to committing a

sex offense in a judicial proceeding.  See Jennings, 602 F.3d at 659 (stating that imposition of

sex offender conditions "would indeed cause stigma," if imposed on a person who had never

been convicted of a sex offense, but finding no liberty interest infringed because the plaintiff had

been convicted of a sex offense).[11]  As for stigma from disclosure, any disclosure of Doe's sex

offender "status" should be limited to the context of the group orientation session, at which the

---

[10] Cf. Gen. Elec., 610 F.3d at 121 (stating rule of Paul v. Davis, 424 U.S. 693, 704-06 (1976), that "stigma alone is insufficient to invoke due process protections").

[11] The plaintiff in Jennings had committed aggravated kidnaping of an eight-year-old boy when he was fifteen years old.  See 602 F.3d at 654.  Unlike Doe, Jennings had been certified as an adult and sentenced to eight years' imprisonment.  See id.  And Jennings apparently committed a subsequent offense involving a thirteen-year-old boy when he was twenty-one.  See id.

fact of Doe's assessment will be disclosed to a small group of people.  An "anomaly" such as the Halloween incident should not happen again, but even if it did, it would pose a less serious concern than if Doe's confidential juvenile records were disclosed, which Brennan has confirmed will not happen.  See Brennan Decl. ¶ 18; Supp'l Brennan Decl. ¶ 37.

Finally, the assessment is only a preliminary step.  It is possible that defendants will determine that Doe does not need treatment; and should they determine that he does need treatment, greater due process protections will be triggered.  Hence, to the extent Doe has been classified as a sex offender (by virtue of being supervised in the Sex Offender Unit or the imposition of the assessment condition), the liberty interest implicated is not the kind of interest that merits the full panoply of due process protections.

The second Mathews factor is the government's interest.  It is beyond dispute that defendants have an important interest in determining whether the supervised releasees they oversee are at risk of committing a sex offense.  Defendants argue that it would be "impractical and overly burdensome" to hold a full-fledged hearing as a matter of course every time they seek to assess a releasee's risk.  See Defs.' Supp'l Mem. [ECF 36] 4.  They correctly note that in many cases, such as where a releasee has a recent rape conviction, the need for an assessment will be "obvious."  See id.  Hence, defendants reason, the written notice and comment procedures currently in place are appropriate.  See 28 C.F.R. § 2.204(c)(2)(i) (providing that releasee shall be notified of proposed modification to conditions of release and given ten days to comment and that, after ten-day comment period, Parole Commission shall have twenty-one days to decide whether to order modification).  Defendants thus raise legitimate concerns about the fiscal and administrative burdens that an across-the-board hearing requirement would entail.

The third Mathews factor relates to the risk of erroneous deprivation and the probable

value of additional procedural safeguards.  Defendants argue that providing more process at this stage would do little to improve the accuracy of their determination.  See Defs.' Supp'l Mem. 4. They say that the evidence relied on is generally undisputed, and that a hearing would likely consist of "contradictory testimony between witnesses offering opinions as to the need for an evaluation."  See id.  The documentary evidence of Doe's past sexual behavior is generally undisputed,[12] and does not raise any issues of "witness credibility and veracity."  See Mathews, 424 U.S. at 343-44.  Accordingly, the Court agrees that a hearing would offer less value at the pre-assessment stage than at the post-assessment, pre-treatment stage.  A hearing at that later stage would involve more than a battle of opinions about Doe's undisputed record and would allow Doe to challenge any judgment by a psychologist or CSOSA that he presently needs treatment.

Defendants have submitted to the Court the Parole Commission's proposed new rules regarding the imposition of new conditions of release for sex offenders.  See 78 Fed. Reg. 11,998 (Feb. 21, 2013).  For an offender on supervised release who, like Doe, has not been convicted of

---

[12] Doe does not contest the accuracy of the facts the Parole Commission had – and actually relied on – in imposing the condition.  He does, however, urge that the Parole Commission did not have before it all of the evidence now before the Court, particularly the court-ordered psychological evaluation.  See 6/21/13 Tr. 6.  He appears to be correct: CSOSA informed the Parole Commission that the evaluation took place, but quoted selectively from the evaluation and did not attach a full copy.  Compl., Ex. 11.  But as noted, neither the fact of the evaluation nor the psychology intern's conclusions is really material to whether the condition imposed was reasonably related to the § 3553 factors.  See 6/21/13 Tr. 6.  And in most cases, as here, the basis for imposing an assessment condition will be a supervised releasee's undisputed juvenile and/or adult criminal history.  That is not to say, however, that there is not value to be gained through improvements to defendants' current process for modifying conditions of release – for example, better communication between CSOSA and the Parole Commission or ensuring that supervised releasees are given reasons for any conditions imposed.

a sex offense,[13] the proposed rules would allow the Parole Commission to impose a condition for

sex offender assessment "after using the notice and 10-day comment procedure" that was used in

this case.  See id. at 11,999, 12,001 (proposed 28 C.F.R. § 2.204(d)(2)(i)).  If, after the

assessment, the Parole Commission determined that treatment appeared warranted and the

offender objected, a hearing would be conducted.  Id. at 11,999.  The offender would be

provided: disclosure of the information supporting imposition of a treatment condition, the

opportunity to testify and present witnesses and evidence, the right to counsel, written findings

regarding the decision, and in most cases, if requested, the opportunity to confront and cross-

examine a person (i.e., a psychologist) who has given information relied on to support imposition

of the condition.  Id. at 12,001 (proposed 28 C.F.R. § 2.204(d)(2)(ii)).  The proposed rules would

also give offenders on supervised release the right to appeal post-release modifications of release

conditions.  See id. at 11,999.

 Weighing the Mathews factors, the Court concludes that Doe received constitutionally

adequate process here.  The challenged condition does not implicate a particularly significant

liberty interest; defendants have made a reasonable judgment that, where a person has committed

a sex offense in the past, an assessment condition aimed exclusively at determining that person's

future risk may be imposed after giving notice and an opportunity for comment; and Doe was

given such notice and opportunity.[14]  In the Court's view, defendants' proposed approach to

-----

 [13] See 42 U.S.C. § 16911(8) (defining "convicted," used with respect to a sex offense, to include "adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense").

 [14] Regrettably, the Parole Commission's Notice of Action did not state any reasons for its decision to impose the assessment condition.  See Compl., Ex. 1 (space for "REASONS:" left blank).  This fact does not change the Court's conclusion, however, because, as evidenced by his counsel's objection letter, Doe knew that the basis for requiring an assessment was his juvenile

assessing and treating supervised releasees with a history of sex offenses strikes a reasonable balance.  Compare Wills, 882 F. Supp. 2d at 78 (finding process inadequate where plaintiff "was provided no notice of any sort prior to the Commission's initial imposition of the condition" (internal quotation marks omitted)).  Deferring a full-fledged hearing (and the accompanying rights to testify, present evidence, confront and cross-examine witnesses, and be represented by counsel) until after treatment has been recommended would account for both the heightened individual interest implicated by a treatment condition and the government's interest in protecting the public while at the same time making efficient use of its limited resources.  See Goings, 786 F. Supp. 2d at 77-78 (noting that requiring CSOSA to hold a "post-risk assessment hearing" "may be acceptable" for due process purposes, but finding that plaintiff was not given a meaningful opportunity to be heard "before, during or after the initial risk assessment").

In concluding that Doe received constitutionally adequate process, the Court does not rely on Doe's purported failure to pursue an administrative appeal.  See Defs.' Supp'l Mem. 3-4.  Doe was at first told that the decision to impose the assessment condition was not appealable and then told that the decision was appealable but that he did not have to appeal.  He cannot be penalized for not vigorously asserting rights that he learned of belatedly and was told were optional.  Moreover, as Doe points out, defendants expressly waived "any objection based on failure to exhaust administrative remedies," Defs.' MSJ 4 n.1, and the Parole Commission's current regulations do not give supervised releasees a right to appeal a change in their conditions of release.  See Pl.'s Resp. to Defs.' Supp'l Mem. [ECF 38] 2.  Nevertheless, Doe was given the process he was due.  Because he is not entitled to a hearing at this time, sending this case back to

_____

sex offense.  Hence, Doe was not prejudiced by the Parole Commission's failure to tell him the reasons for its decision.

the Parole Commission would accomplish nothing.

If Doe undergoes the sex offender assessment and it is determined that he needs treatment, it is not clear what process he would be given before treatment is imposed, as the proposed rules submitted by defendants have not been implemented.  As defendants noted at the motions hearing, that issue is not now before the Court.  It is not irrelevant to the Court's decision, however.  The Court's conclusion that Doe's due process rights have not been violated is premised largely on its finding that the assessment condition does not require or authorize treatment, and also on its determination that defendants' proposed approach to imposing sex offender conditions of supervised release – affording notice and an opportunity for comment before assessment and then affording a full-fledged hearing before treatment – is reasonable.[15] Should the factual circumstances be different than defendants have represented them to be, the Court might reach a different conclusion.

B.      Substantive Due Process

Doe claims that defendants' imposition of the sex offender assessment condition violates his substantive due process rights by "infring[ing] on [his] fundamental rights to refuse unwanted mental health treatment and to privacy in sexual matters."  Compl. ¶ 72.  But for the same reasons that the condition does not implicate protected liberty interests grounded in unwanted mental health treatment or sexual privacy, it does not infringe on any fundamental rights.  See Abigail Alliance, 495 F.3d at 702 (noting that "the Supreme Court has cautioned against

---

[15] Although defendants do not guarantee that Doe would be given a hearing before being subjected to treatment, they stress the difference between assessment and treatment in their briefing and appear to accept that a treatment condition would implicate a protected liberty interest.  Defendants also appear to recognize the practical benefit from conducting hearings at the post-assessment, pre-treatment stage, as opposed to the pre-assessment stage, as they state that a hearing "at this [earlier] stage" would be unduly burdensome.  See Defs.' Supp'l Mem. 4.

expanding the substantive rights protected by the Due Process Clause"); see also Coleman I, 395

F.3d at 223 (finding procedural due process violation based on liberty interest in avoiding sex

offender classification and compelled treatment but finding no substantive due process violation).

To reiterate, the condition does not require treatment, and Doe's right to privacy will not be

infringed because his juvenile adjudication is protected from disclosure by law.  Accordingly, the

Court concludes that defendants are entitled to summary judgment on Doe's substantive due

process claim.

## CONCLUSION

Because the Court finds that defendants are entitled to judgment as a matter of law on

Doe's statutory and due process claims, their motion for summary judgment will be granted;

because the Court has resolved the merits entirely in favor of defendants, Doe's motion for a

preliminary injunction will be denied.  A separate order accompanies this memorandum opinion.


_____/s/_____
JOHN D. BATES
United States District Judge


Dated: August 5, 2013